

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DANIEL EUGENE ANDERSON, §
§
　　　　Petitioner, §
§
v. § No. 4:18-CV-503-A
§
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
　　　　Respondent. §

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Daniel Eugene Anderson, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice, against Lorie Davis, director of that division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

**I. FACTUAL AND PROCEDURAL HISTORY**

In February 2015 a jury in Tarrant County, Texas, Case No. 1331169D, found petitioner guilty of murder and assessed his punishment at 99 years' confinement. (Clerk's R. 156.) Petitioner's conviction was affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary

review. (Docket Sheet 1-2.) Petitioner also sought postconviction state habeas-corpus relief by challenging his conviction in a state habeas application, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (SHR[1] 2-19 & Action Taken.) This federal petition followed.

The state appellate court briefly summarized the factual background of the case as follows:

> The evidence showed that on the evening of June 1, 2013, [petitioner] and three other black males drove to the home of D.T., otherwise known as Mainey, shot up his home, shot him in the leg, and shot his twelve-year-old cousin J.H. multiple times with an assault rifle; J.H. died on June 3, 2013.

(Mem. Op. 2.)

## II. ISSUES

Petitioner raises three grounds for habeas relief:

(1) he received ineffective assistance of counsel based on counsel's failure to challenge the state's case;

(2) the trial court denied him his constitutional right to confrontation; and

(3) he was denied his constitutional right to be heard by a 12-person jury.

(Pet. 6-7.)

## III. RULE 5 STATEMENT

Respondent believes that petitioner's second ground is

---

[1] "SHR" refers to the record in petitioner's state habeas proceeding in WR-87,713-01.

2

unexhausted and procedurally barred from federal habeas review, but she does not does not allege that the petition is otherwise barred by successiveness or the federal statute of limitations. (Resp't's Answer 4.)

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100-01 (2011).

The statute also requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Additionally, when the Texas Court of Criminal Appeals, the

3

state's highest criminal court, denies relief on a federal claim without written opinion, a federal court may presume that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary and applied the correct "clearly established federal law" in making its decision. *Johnson v. Williams,* 568 U.S. 289, 298 (2013); *Richter,* 562 U.S. at 99. In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* 138 S. Ct. 1188, 1191-92 (2018).

## V. DISCUSSION

### A. Ineffective Assistance of Counsel

Under his first ground, petitioner claims that he received ineffective assistance of trial counsel because counsel failed to challenge the state's case by openly admitting that he did not challenge the state's case effectively to the jury and by failing to object to the hearsay testimony of Detective Thomas O'Brien regarding out-of-court statements made by state's witness C.J. to Detective Matt Barron. (Pet. 6.; Pet'r's Mem. 5)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington,* 466 U.S. 668, 688 (1984). To

4

establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the ineffective-assistance claims on the merits, this court must review petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 105.

Petitioner's trial counsel, Fred Cummings, an experienced,

board-certified criminal defense attorney, responded to petitioner's claims via affidavit filed in the state habeas proceeding, in relevant part, as follows (any spelling, punctuation, and/or grammatical errors are in the original):

### [PETITIONER]'S TRIAL COUNSEL WAS INEFFECTIVE FOR ALLOWING THE STATE TO PROSECUTE ON A "THEORY" WHILE ADMITTING HE DID NOT CHALLENGE THE STATE'S CASE TO A FULL AND FAIR TRIAL

   This claim is primarily based upon a portion of my argument to the jury that has been taken out of context. I began my argument as follows:

   Ladies and gentlemen, there is no dispute that [J.H.] died as a result of a homicide. Throughout the presentation of the State's case last week, *you'll notice that I did not challenge those facts.* It is not an issue here. That child died as a result of a murder. And I'm very sorry for the loss of his loved ones, but I can't do anything about that, and neither can you. My job is to take care of that young man and make sure that you evaluate this case according to the evidence that's been brought before you. And that's what I'd like to do with you. I'd like to go through the evidence that has been brought before you and kind of analyze it with you and point out some things about it.

   The balance of my argument was used to go through the evidence presented in the case to point out the absence of any physical or forensic evidence implicating [petitioner] in the death of the victim. I went through the testimony, witness by witness, pointing out the insufficiency of the evidence against [petitioner] and the questionable integrity of several of the State's witnesses.

   I made my defense theme clear during opening statement when I told the jury that there was no physical evidence or forensic evidence that implicated [petitioner] in this offense and the State's case was based entirely upon testimony from questionable

6

witnesses.

> The evidence was irrefutable, in my opinion, that [J.H.] died as a result of gunshot wounds. It was not in [petitioner]'s best interest to challenge that overwhelming evidence when it did not implicate [petitioner] in the murder of [J.H.]. It was my intent to maintain credibility with the jury so that they would be more receptive to considering the insufficiency of the State's evidence.
>
> . . .
>
> I argued that the evidence was insufficient to convict [petitioner] of murder. [Petitioner] has taken a portion of that argument out of context to put forth this claim. My intention was to focus the jury on the defense that I had put forth throughout the trial: that there was insufficient evidence to convict [petitioner] of [J.H.]'s murder.

### [PETITIONER] WAS DENIED HIS DUE PROCESS RIGHT TO CONFRONT THE WITNESS AGAINST HIM DUE TO THE STATE ALLOWING SOMEONE ELSE TO GIVE A TESTIMONIAL STATEMENT TO THE JURY GIVEN BY DET. O'BRIEN DURING THE CRITICAL STAGES OF [PETITIONER]'S TRIAL

[C.J.] was a witness for the State. At the time of his testimony [C.J.] was 10 years old. [C.J.] testified about being sent outside by his granny to get his brother, James, who was in the driveway. [C.J.] testified that James was walking up to the house but he stopped because of the lights from a dark blue car that stopped in front. [C.J.] testified that four people started shooting and that one of them had a big gun and another had a short gun. [C.J.] testified that he ran into the house and dived on top of his 3 year old brother but James did not go into the house because he was already on the ground. When asked if he remembered that he told the police that the car was black, [C.J.] said "Yes, but it was blue."

I cross-examined [C.J.]. [C.J.] did not remember telling the police that it was a black car. He remembered four people getting out of the car and that they were all shooting, three of the four were shooting long guns. [C.J.] testified the he was not able to

7

recognize anyone in the car but he could tell they were
black men. On re-direct [C.J.] testified the men were
wearing black clothes. I did not object to [C.J.] being
finally excused from the court proceedings.

    Later in the trial, Homicide Detective Thomas
O'Brien testified for the prosecution. Detective
O'Brien testified that his partner, Detective Matt
Barron, interviewed [C.J.], who was nine years old at
the time, at Fort Worth Police Headquarters. Detective
O'Brien testified the interview of [C.J.] was recorded
and that he had reviewed that recording. The prosecutor
asked Detective O'Brien "What description did he give
for the vehicle?" and I made a hearsay objection that
was overruled. The detective testified that [C.J.]
initially described the vehicle as a black vehicle with
black tint, black wheels and some sort of red tape on
the back right light. A few questions later, the
prosecutor asked "Did he say how many people were in
the vehicle?" The record shows his response: "He
described -- he believed there were four" and then
shows a hearsay objection from me that was sustained.
After being told to rephrase her question, the
prosecutor asked, "Did he tell you how many shooters
were there at the scene?" and I made the same objection
that was overruled. Detective O'Brien then answered,
"At the time he believed there were two." I cross
examined Detective O'Brien after the direct examination
of the prosecutor.

    [Petitioner] is not very specific, however, I
believe the testimony which is the basis for
[Petitioner]'s second claim is captured above. I was
able to cross-examine [C.J.] as indicated above early
in the trial. Detective O'Brien testified later in the
trial. I believe the prosecutor asked several questions
of Detective O'Brien that called for hearsay responses.
Some of my objections were sustained and some
overruled. I did not think that anything would be
gained by calling [C.J.] back to the stand.

(SHR 53-57 (record references omitted) (emphasis added).)

Based on the record and the submitted affidavit, the state habeas court entered the following factual findings relevant to the claim:

8

9.  Mr. Cummings made an opening statement to the jury that announced the defense's strategy which was to point out the insufficiency of physical and forensic evidence implicating [petitioner] in the murder.

10. [Petitioner] has taken Mr. Cummings' jury argument out of context. Mr. Cummings did not openly admit that he did not challenge the State's case on critical evidence.

11. Mr. Cummings told the jury during argument that he was not challenging the fact that a child died as a result of a murder.

12. During his argument to the jury, Mr. Cummings went through the evidence presented by the State and pointed out the absence of physical and forensic evidence implicating [petitioner] in the death of the victim.

13. During his argument to the jury, Mr. Cummings went through the State's evidence witness by witness and pointed out the insufficiency of the evidence against [petitioner].

14. During his argument to the jury, Mr. Cummings challenged the credibility of several of the State's witnesses.

15. Mr. Cummings's defense theme at trial was that there was no physical or forensic evidence implicating applicant in the murder. Mr. Cummings made his defense theme clear during his argument to the jury.

16. The evidence was irrefutable that the victim died as a result of a gunshot wound. It was the trial strategy of Mr. Cummings to maintain credibility with the jury by not challenging the overwhelming evidence that the victim died of a gunshot wound.

17. By using this trial strategy, Mr. Cummings hoped the jury would be more receptive to considering the insufficiency of the State's evidence against [petitioner].

. . .

28. [C.J.] was a witness for the State who testified in front of the jury during trial.

29. Detective Thomas O'Brien testified for the State and told the jury that he interviewed [C.J.], who was nine-years old at the time.

30. When the State asked Detective O'Brien about statements [C.J.] made, Mr. Cummings objected.

31. Mr. Cummings made several hearsay objections to the testimony of Detective O'Brien. Some of those objections were sustained and some were overruled.

32. Mr. Cummings cross-examined Detective O'Brien.

33. Mr. Cummings cross-examined [C.J.]

34. Mr. Cummings did not believe anything would be gained by calling [C.J.] back to the stand after the testimony of Detective O'Brien.

. . .

47. [Petitioner] presents no evidence that the outcome of his prosecution would have been different had Mr. Cummings acted in the manner [petitioner] claims he should have.

48. Mr. Cummings provided [petitioner] with adequate representation guaranteed by the Sixth Amendment.

49. [Petitioner] was not denied effective assistance of counsel.

(Id. at 72-73, 75-77 (record references omitted).)

Based on its findings, and applying the *Strickland* standard, the state habeas court concluded that petitioner had failed to meet either prong of the test. (Id. at 77-78.)

Petitioner has not presented clear and convincing evidence or persuasive argument to rebut the state court's factual

10

findings. Thus, deferring to those findings, the state court's determination of the claims is not an unreasonable application of *Strickland*. (Reporter's R., vol. 7, 12-22.) "Acknowledgment of aspects of the case can be a proper 'effort to bolster credibility with the jury.'" *See Dowthitt v. Johnson*, 230 F.3d 733, 751 (5th Cir. 2000) (quoting *Kitchens v. Johnson*, 190 F.3d 698, 704 (5th Cir. 1999)). Counsel's jury argument admitting that the victim died as a result of a murder was strategic. A reviewing court will not second guess such strategic decisions by counsel. *Strickland*, 466 U.S. at 689-90. Further, the record refutes petitioner's claim that counsel failed to object to hearsay statements made by Detective O'Brien. Petitioner is not entitled to relief under his first ground.

### B. Right to Confrontation

Under his second ground, petitioner claims that the trial court denied him his constitutional right to confrontation of two state witnesses by releasing them without his agreement. (Pet. 6.) The state habeas court found that this claim was procedurally barred because, although raised in his state habeas application, the claim should have been raised on direct appeal, but was not, and thus was forfeited. (SHR 79-80.) Federal habeas review of a claim is also procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Coleman v. Thompson*, 501

U.S. 722, 729 (1991). The Texas Court of Criminal Appeals has repeatedly held that claims that could have been raised on direct appeal may not be raised in a state habeas petition. *See Ex parte Gardner,* 959 S.W.2d 189, 199-200 (Tex. Crim. App. 1998). The state court clearly relied upon a firmly established and regularly followed state procedural rule to deny this claim that, in turn, represents an adequate state procedural bar to federal habeas review. *See Renz v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994); *Ex parte Gardner,* 959 at 199. *See also Ex parte Banks,* 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (holding "the Great Writ should not be used to litigate matters which should have been raised on appeal"). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, petitioner's second ground is procedurally barred from the court's review. *See Coleman,* 501 U.S. at 749-50.

**C. 12-Person Jury**

Finally, under his third ground, petitioner claims that his right under the Texas Constitution to be heard by twelve jurors was violated because one juror became ill and could not continue, leaving only eleven jurors to decide his fate. (Pet. 7.) TEX. CONST. art. V, § 13. Although the Texas Constitution requires that juries in district courts be composed of twelve persons, article 36.29(a) of the Texas Code of Criminal Procedure provides, in relevant part:

12

> Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman. Except, . . . however, after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it.

TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West Supp. 2017).

The Sixth Amendment constitutional guarantee of trial by jury in criminal cases applies to states through the Fourteenth Amendment. *Duncan v. Louisiana,* 391 U.S. 145, 149 (1968). The Sixth Amendment does not, however, prescribe the size of the jury that a state must provide for a criminal defendant so long as there are at least six members. *Ballew v. Georgia,* 435 U.S. 223, 239 (1978); *Williams v. Florida,* 399 U.S. 78, 100 (1970). Further, the question of whether a juror is properly dismissed under a disability within the meaning of article 36.29(a) is purely a question of state law. The state court's interpretation of state law is not subject to review by a federal court in a habeas proceeding unless it rendered the petitioner's trial fundamentally unfair. *Hughes v. Dretke,* 412 F.3d 582, 591 (5th Cir. 2005); *Mills v. Collins,* 924 F.2d 89, 92 (5th Cir. 1991). Petitioner has not shown that the state court's application of article 36.29(a) rendered his trial fundamentally unfair or ran afoul of a federal constitutional right. *Goodrum v. Quarterman,*

547 F.3d 249, 261 (5th Cir. 2008). Petitioner is not entitled to relief under his third ground.

## VI. EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing to further develop the record in support of his claims. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011). *See also Blue v. Thaler,* 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)). Here, save for petitioner's second ground, which is procedurally barred, the petition concerns claims under section 2254(d)(1) that were adjudicated on the merits in state court. Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state courts. Therefore, he is not entitled to an evidentiary hearing.

For the reasons discussed herein,

The court ORDERS that the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied.

SIGNED August 8, 2019.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

14